**IN THE U.S. DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**LITTLE ROCK DIVISION**

**JOHN CHISM BAIL BONDS, INCORPORATED**                                        **PLAINTIFF**

**v.**                          **NO. 4:09-cv-0427  BD- JLH**

**BRUCE PENNINGTON, individually,**
**and in his official capacity as the elected**
**Sheriff of Saline County;**
**RAY PENNINGTON, individually,**
**and in his official capacity as**
**the jail administrator for the Saline County Jail;**
**KEN CASADY, individually**
**and in his official capacity as the**
**elected prosecutor of Saline County**
**22nd Judicial District;**
**JUDGE GARY ARNOLD/Saline County**
**Circuit Court Second Division;**
**JUDGE BOBBY McCALLISTER/Saline County**
**Circuit Court First Division;**
**JUDGE MIKE ROBINSON/Benton District Court;**
**JUDGE GRISHAM PHILLIPS/Saline County**
**Circuit Court Third Division;**
**JUDGE ROBERT HERZFELD/Saline County**
**Circuit Court Fourth Division;**
**JUDGE CURTIS RICKARD/Bryant District Court**
 **and SALINE COUNTY ARKANSAS**                                        **DEFENDANTS**


**BRIEF IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**
**BY JUDGE GARY ARNOLD, JUDGE BOBBY McCALLISTER, JUDGE MIKE**
**ROBINSON, JUDGE GRISHAM PHILLIPS, JUDGE ROBERT HERZFELD, JUDGE**
**CURTIS RICKARD, AND PROSECUTING ATTORNEY KEN CASADY**

Come now Defendants, Judge Gary Arnold, Judge Bobby McCallister, Judge Mike

Robinson, Judge Grisham Phillips, Judge Robert Herzfeld, Judge Curtis Rickard, and

Prosecuting Attorney Ken Casady, by and through Attorney General Dustin McDaniel and

Assistant Attorney General Suzanne Hixson, and for their Brief in Support of Motion to Dismiss

Amended Complaint do hereby state:

# I.    **INTRODUCTION**

On January 5, 2009, six judges of the 22nd Judicial District of the State of Arkansas signed an Order of the Court (Order) finding that all bondsmen who bond a defendant from the Saline County Detention Center shall collect a 10% premium and statutorily required fees before a defendant is released "on bond" in accordance with A.C. 17-19-301.  At the outset, the Order established that the Judges were well informed as to the current procedure and law regarding bail bonds for criminal defendants prior to trial in the 22nd Judicial District.  The Order, file-marked January 22, 2009, tracks the requirements of Arkansas Rule of Criminal Procedure 9.2, Release on money bail. *(D.E. # 1 – Complaint, Order - p. 10). (D.E. # 14-3, p. 1 – Order)*.  Plaintiff, John Chism Bail Bonds, Incorporated (JCBB), alleges the Order interferes with its business relations and its legal "privilege" to bond clients from jail in Saline County. *(D.E. # 1 – Complaint, pp. 1, 2).  (D.E. # 14 – Amended Complaint, p. 2)*.  Plaintiff further contends the Order violates its rights to Equal Protection and Substantive Due Process. *(D.E. # 1 – Complaint, pp. 1, 5, 6). (D.E. # 14 – Amended Complaint, pp. 2, 5, 14)*.  Plaintiff also claims that to the extent the Defendants request or order sheriff's bonds instead of professional surety bonds, such action amounts to a suspension of its bonding license in Saline County without due process.  *(D.E. # 1 – Complaint, p. 2, 5).  (D.E. # 14 – Amended Complaint, p. 6)*.  Plaintiff accuses Defendants of engaging in a civil conspiracy by meeting on a date unknown and agreeing to set only sheriff's bonds for criminal defendants in Saline County, Arkansas, beginning on June 5, 2009.  *(D.E. # 14, - Amended Complaint, p. 5 ¶ 22, p. 13 ¶ 80)*.  Plaintiff maintains all of the Defendants violated Arkansas law by interfering with its contractual relationships, business expectancies, and property rights by establishing order, laws, and rules that effectively suspend its ability to bond clients from jail in Saline County and further claims that the Judges' actions violate the

Separation of Powers Doctrine.  *(D.E. # 14 – Amended Complaint, pp. 2, 9, 10).*  Finally, Plaintiff charges Defendant Casady maliciously prosecuted JCBB and its agent for civil contempt on March 3, 2009, for violation of the January 5, 2009 Order.  *Id. at pp. 2, 12.*  Plaintiff seeks monetary, injunctive, and declaratory relief against the Defendants in their individual and official capacities.  *Id. at  pp. 1, 13, 14.*

## II.  <u>SERVICE OF PROCESS</u>

Neither the six Judicial Defendants nor the Prosecuting Attorney was personally served with the Amended Complaint filed on July 20, 2009. *(D.E. # 14 – Amended Complaint).* However, all of the Judges, as well as the Prosecuting Attorney, have agreed to waive service of process.

## III.  <u>STANDARD OF REVIEW</u>

Rule 8 of the Federal Rules of Civil Procedure states:   "A pleading which sets forth a claim for relief ... shall contain... (1) a short and plain statement of the claim *showing that the pleader is entitled to relief* ...." (Emphasis added).  Rule 12(b)(6) of the Federal Rules of Civil Procedure states that defenses may be made by motion for failure to state a claim upon which relief can be granted.  When analyzing a 12(b)(6) claim, the complaint's factual allegations are accepted as true and viewed in the light most favorable to the plaintiff.  *Hanten v. The School District of Riverview Gardens*, 183 F.3d 799 (8th Cir. 1999) (citing *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999)).  But, the plaintiff's complaint should be dismissed " '. . . if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations.' "  *St. Croix Waterway Association v. Meyer*, 178 F.3d 515 (8th Cir. 1999) (citing *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)).

# IV.  <u>ARGUMENT</u>

**A.    Plaintiff's Claims Against The Judges Of The 22nd Judicial District Of Arkansas Should Be Dismissed Because The Claims Are Barred By The Doctrine Of Absolute Judicial Immunity.**

It is well established that judges are absolutely immune from liability for acts taken in conjunction with executing their judicial duties.  *See e.g., Clinton v. Jones*, 117 S.Ct. 1636, 1643, fn. 18 (1997) (*citing Pierson v. Ray*, 386 U.S. 547, 554-555 (1967)).  In *Pierson*, The United States Supreme Court spelled out the rationale for judicial immunity:

> [Judicial] immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences' . . . he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption.  Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

386 U.S. at 554-55 (citations omitted).

"Judges are absolutely immune from suit for money damages when they act in their judicial capacity . . . ."  *Martin v. Hendren*, 127 F.3d 720, 721 (8th Cir. 1997) (citing *Duty v. City of Springdale, Arkansas*, 42 F.3d 460, 462 (8th Cir. 1994)).  "Because some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge."  *Stump v. Sparkman,* 435 U.S. 349, 356 (1978).  Even an act in excess of jurisdiction will not deprive a judge of immunity.  *Id.*

Judicial immunity is absolute even in extreme and unusual circumstances, certainly not present in the instant case, where a judge acts in excess of jurisdiction or with malice.  *Duba v. McIntyre*, 501 F.2d 590, 591-92 (8th Cir. 1974) citing *Pierson,* 386 U.S. at 554).  *See also Mireles v. Waco*, 502 U.S. 9, 11 (1991) ("Judicial immunity is an immunity from suit, not just

from ultimate assessment of damages."); *Duty v. City of Springdale*, 42 F.3d 460, 462 (8th Cir. 1994) ("Judges performing judicial functions enjoy absolute immunity from § 1983 liability."); *Robinson v. Freeze*, 15 F.3d 107, 108 (8th Cir. 1994) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority."); *Brictson v. Woodrough*, 164 F.2d 107, 109 (8th Cir. 1947) ("Resting on considerations of public policy to the end that the administration of justice may be independent and based on the free and unbiased convictions of the judge, uninfluenced by apprehension of personal consequences, it is a general rule that, where a judge has jurisdiction over the subject matter and the person, he is not liable civilly for acts done in the exercise of his judicial function, even though he acts erroneously, illegally, or irregularly, or even corruptly."); *Mann v DeShields*, 2008 WL 1862308, * 2 (W.D. Ark. April 24, 2008) (holding that both judge and court clerk were absolutely immune from § 1983 suit).  Judicial immunity extends to *all* judges, including state court judges.  *See Mullen v. Galati*, 843 F.2d 293, 294 (8th Cir. 1988).  This broad immunity is not merely a defense to liability, but rather provides the judicial official with absolute immunity from suit.  *Mitchell v. Forsythe*, 472 U.S. 511, 526 (1985).

Defendants Arnold, McCallister, Robinson, Phillips, Herzfeld, and Rickard are Arkansas state court judges.  They are absolutely immune from both suit and liability for the conduct complained of in Plaintiff's Complaint and Amended Complaint.  On its face, the Order of the Court of which Plaintiff complains is a judicial act that pertains exclusively to the 22nd Judicial District of the State of Arkansas.  Any suggestion that the Defendant Judges lacked jurisdiction to promulgate such an order is absurd.  Furthermore, no judicial duty is more important than the discretionary act of setting bond for criminal defendants.  The setting of bond involves the careful consideration and weighing of numerous factors relevant to the risk of willful

nonappearance. Plaintiff's contention to the contrary and its assertion that the Judges acted outside the scope of their immunity is plainly incorrect. *(D.E. # 14 – Amended Complaint, p 5)*. Consequently, the present action against the Judicial Defendants for money damages and attorney's fees must be dismissed for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**B.      Plaintiff's Claim Against Prosecuting Attorney Casady Should Be Dismissed Because Prosecuting Attorneys Are Entitled To Absolute Immunity From Suit For Conduct Taken In Their Role As Advocates For The State.**

Both the United States Supreme Court and the Eighth Circuit have recognized that prosecutors are absolutely immune from suit for any conduct that is taken in their role as advocates for the state. *See e.g., Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Prosecutors are immune even if a constitutional violation is alleged. *Id.* Prosecutorial immunity is not merely a defense to liability but rather a complete bar to damage suits. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In *Imbler*, a man convicted of murder and sentenced to death sought federal habeas relief, contending that a prosecutor had knowingly used perjured testimony at trial and had withheld exculpatory evidence from Imbler. *Imbler*, 424 U.S. at 413. A district court granted Imbler's habeas petition, finding that that the prosecution's conduct amounted "to the culpable use by the prosecution of misleading or false testimony" and the withholding of evidence favorable to Imbler. *Id.* at 414-15. Imbler subsequently filed an action under 42 U.S.C. § 1983 against the prosecutor and several police officers, alleging they unlawfully conspired to wrongfully charge and convict him. *Id.* at 415-16. Confirming the broad immunity of prosecutors, the United States Supreme Court held that the prosecutor in *Imbler* was entitled to absolute immunity from suit. *Id.* at 430-31. The Court emphasized that a prosecutor is not stripped of this immunity even

6

in circumstances where it is alleged that he performed his duties maliciously, dishonestly, or in violation of the Constitution.  *Id.* at 427.  The purpose of absolute prosecutorial immunity is to protect the prosecutor as a key participant in the criminal justice process, recognizing that it is "better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation".  *Id.* at 428 (citations omitted).

Given the United States Supreme Court's holding in *Imbler*, there can be no doubt that Prosecutor Casady is entitled to immunity from suit here, where Plaintiff alleges malicious prosecution for contempt of court for its alleged violation of the January 5, 2009,  Order.  *(D.E. # 1 – Complaint, p. 10 – Order of the Court).  (D.E. # 14 – Amended Complaint, p. 12).  (D.E. # 14-3 – p. 1 – Order of the Court).*  With respect to prosecutorial immunity, the relevant question is whether the wrong complained of was committed by the prosecutor within the scope of his official duties.  *Culpepper v. Smith*, 302 Ark. 558, 572, 792 S.W. 2d 293, 300 (1990).  Because Prosecutor Casady exercised his official role as advocate for the State with respect to the initiation and prosecution of a contempt proceeding against JCBB and its agent for violation of the January 5, 2009, Court Order, he is absolutely immune from suit for damages and the present action against him for money damages and attorney's fees must be dismissed for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *(D.E. # 14 – Amended Complaint, p. 12).*

**C.     Plaintiff's Claims Against The Judges And Prosecuting Attorney Of The 22nd Judicial District Of The State Of Arkansas Should Be Dismissed Because Employees Of The State Of Arkansas Sued In Their Official Capacities Are Entitled To Sovereign Immunity.**

Plaintiff's claims against Defendants Arnold, McCallister, Robinson, Phillips, Herzfeld, Rickard, and Casady in their official capacities as employees of the 22nd Judicial District of the State of Arkansas are barred by the doctrine of sovereign immunity.  Because the Judges and

7

Prosecutor are employees of a State agency, this suit is in effect a suit against the State of Arkansas.  The Eleventh Amendment to the United States Constitution bars suits brought in federal court by an individual against a state.  *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 54, (1996).

**D.    Plaintiff's Claims Against The Judges And Prosecuting Attorney Of The 22nd Judicial District Of The State Of Arkansas Should Be Dismissed Because State Employees Sued In Their Individual Capacities Are Entitled To Qualified Immunity.**

Judges Arnold, McCallister, Robinson, Phillips, Herzfeld, Rickard, and Prosecuting Attorney Casady are employees of the State of Arkansas and thus have qualified immunity from suit in their individual capacities.  Qualified immunity is a question of law.  A defendant acting on behalf of the State is entitled to immunity from allegations of constitutional wrongs unless the particular constitutional right alleged was firmly established in law and unless the "contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635 (1987).  Because A.C.A. 17-19-301 makes no provision for the practice of "credit bonding", because Ark.R.Crim.P. 9.2(b)(ii) authorizes the execution of an unsecured bond in an amount specified by the judicial officer accompanied by a deposit of cash or securities equal to 10% of the face amount of the bond, and because A.C.A. 16-84-102 and A.C.A. 16-81-109 authorize a sheriff or other law enforcement officer to take bail, there can be no doubt that the Judges and Prosecuting Attorney fully performed their official duties in a completely reasonable and lawful manner.  Therefore, they are entitled to qualified immunity and the claims against them should be dismissed.

**E.      This Court Should Abstain Pursuant to the *Younger* Doctrine.**

As noted, the case should be dismissed on any one of the independent grounds discussed above.  In addition, this Court should abstain under the doctrine enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 760 (1979):

> "[T]he notion of 'comity,' that is, a proper respect for state
> functions, a recognition of the fact that the entire country
> is made up of a Union of separate state governments, and
> a continuance of the belief that the National Government
> will fare best if the States and their institutions are left
> free to perform their separate functions in their  separate
> ways...What the concept does represent is a system
> in which there is a sensitivity to the legitimate
> interests of both State and National Governments, and
> in which the National Government, anxious though it
> may be to vindicate and protect federal rights and
> federal interests, always endeavors to do so in ways that
> will not unduly interfere with the legitimate  activities of
> the States."

*Younger v. Harris*, 401 U.S.37 at 44.

In *Pennzoil Company v. Texaco, Inc.*, 481 U.S. 1, 11, 107 S.Ct. 1519 (1987), the Supreme Court held that the concern for comity mandates application of *Younger* abstention not only when the pending state proceedings are criminal, but also when certain civil proceedings are pending, if the State's interests in the proceeding are so important the exercise of the federal power would disregard the comity between the States and the National Government.

*Pennzoil  Company v. Texaco, Inc.*, 481 U.S. 1 at 11.

Citing *Moore v. Sims*, 442 U.S. 415, 428, 99 S.Ct. 2371 (1979) the *Pennzoil* Court also held that:

> "Another important reason for abstention is to avoid
> unwarranted determination of federal constitutional
> questions.  When federal courts interpret state statutes
> in a way that raises federal constitutional questions, "a
> constitutional determination is predicated on a reading

> of the statute that is not binding on state courts and
> may be discredited at any time – thus essentially
> rendering the federal-court decision advisory and
> the litigation underlying it meaningless."

*Pennzoil Company v. Texaco, Inc.*, 481 U.S. 1 at 11. Furthermore, the *Pennzoil* Court noted that avoidance of unwarranted determination of federal constitutional questions had special significance to the case:

> "Because Texaco chose not to present to the Texas
> courts the constitutional claims asserted in this case,
> it is impossible to be certain that the governing
> Texas statutes and procedural rules actually raise
> these claims.  Moreover, the Texas Constitution
> contains an 'open courts' provision . . . that appears
> to address Texaco's claims more specifically than
> the Due Process Clause of the Fourteenth Amendment.
> Thus, when this case was filed in federal court, it was
> entirely possible that the Texas courts would have
> resolved this case on state statutory or constitutional
> grounds, without reaching the federal constitutional
> questions Texaco raises in this case." [1]

*Id.* at 11, 12.  The Court observed that *Younger* abstention in situations like this "offers the opportunity for narrowing constructions that might obviate the constitutional problem and intelligently mediate federal constitutional concerns and state interests.  *Id* at 12.  Citing *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643 (1941), the Court noted that in some cases, the probability that any federal adjudication would be effectively advisory is so great that this concern alone is sufficient to justify abstention, even if there are no pending state proceedings in which the question could be raised.  *Pennzoil Company v. Texaco, Inc*, 418 U.S. 1, 12n.9.  The *Pennzoil* Court further stated that considerations similar to those that mandate *Pullman* abstention are relevant to a court's decision whether to abstain under *Younger*,

---

[1] Article II, § 13 of the Arkansas Constitution contains an "open courts" provision that grants every person the right to a certain remedy in the laws for all injuries or wrongs he may receive in his person, property, or character.

observing that the various types of abstention are not rigid pigeonholes into which federal courts must try to fit a case, but rather reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes. *Id.*

The Supreme Court has repeatedly recognized that the States have important interests in administering their judicial systems. *Pennzoil Company v. Texaco, Inc*., 481 U.S. 1, 12, 13, 107 S.Ct. 1519 (1987). For example, in *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211 (1977), the Supreme Court held that a federal court should have abstained from adjudicating a challenge to a State's contempt process. Arkansas' interest in the operation of its judicial system is clearly equally as important as the interest of the state discussed in *Juidice*. The entry and enforcement of the January 5, 2009, Order of the Court should be left to the Judges of Saline County in the first instance and to the Arkansas state court system in general. Even Plaintiff acknowledges that the authority to enact laws or rules regarding the practice of credit bonding lies within the State of Arkansas. *(D.E. # 14 – Amended Complaint, p. 10)*. Because Arkansas has a vital interest in the operation of its judicial system, this Court should abstain from hearing Plaintiff's attacks on state court orders.

**F.    Because The Setting Of Bond Is Within The Court's Discretion And Because Plaintiff's Ability To Bond Clients From Jail Is Not A Right But A Privilege, Plaintiff Fails To State A Claim For Relief.**

Plaintiff asserts that it has a legal right or privilege to bond clients from jail in Saline County. *(D.E. # 1 - Complaint p. 2)*. However, neither the Arkansas Rules of Criminal Procedure nor any other source of law gives any bail bondsman any right or legally enforceable privilege to post bond for an arrestee in any particular case. Release of an arrestee prior to the first appearance is completely discretionary on the part of the judicial officer and Plaintiff has no right or privilege in the matter. *See Walden v. Carmack*, 156 F.3d 861, 874 (8th Cir. 1998). In

*United Bonding Co. v. Johnson*, 293 Ark. 467, 739 S.W. 2d 147 (1987), for example, the Arkansas Supreme Court discussed that admission to bail is a discretionary matter within the authority of the State's trial courts.  Plaintiff's allegation that the January 5, 2009, Order of the Court interferes with its legal privilege to bond felony clients in Saline County fails as a matter of law to state a claim upon which relief can be granted and the Complaint and Amended Complaint should be dismissed.

### G.   Because Sheriff's Bonds Are Authorized By Ark.R.Crim.P. 9.2, A.C.A. 16-84-102, And 16-81-109, Plaintiff Has Failed To State A Claim Upon Which Relief Can Be Granted.

Pursuant to Ark.R.Crim.P. 8.1, an arrested person who is not released by citation or by other lawful manner shall be taken before a judicial officer without unnecessary delay.  Pursuant to Ark.R.Crim.P. 8.3, the judicial officer shall decide the question of the defendant's pretrial release by first determining by an informal hearing whether there is probable cause of detaining the arrested person pending further proceedings.  After a pretrial release inquiry, as required to Ark.R.Crim.P. 8.5, should the judicial officer determine that money bail should be set, pursuant to Ark.R.Crim.P. 9.2(b) the judicial officer shall require one of the following:

(i) the execution of an unsecured bond in an amount specified by the judicial officer, either signed by other persons or not;

(ii) the execution of an unsecured bond in an amount specified by the judicial officer, accompanied by a deposit of cash or securities equal to ten percent (10%) of the face amount of the bond.  Ninety percent (90%) of the deposit shall be returned at the conclusion of the proceedings, provided the defendant has not defaulted in the performance of the conditions of the bond; or

(iii) the execution of a bond secured by the deposit of the full amount in cash, or by other property, or by obligation of qualified sureties.

A.C.A. 16-84-102 and A.C.A. 16-81-109 explicitly authorize a sheriff or other law enforcement officer to take bail.  Pursuant to Ark.R.Crim.P. 9.2(b)(ii), a defendant who is

ordered by a judicial officer to post an unsecured bond in an amount specified by the judicial officer (sheriff's bond) must deposit 10% of the face amount of the bond in cash or securities. The requirement of a 10% cash deposit imposes a personal investment in the bond.  Moreover, because 90% of the cash deposit shall be returned to the defendant at the end of the proceedings, provided he has not defaulted, sheriff's bonds may be less restrictive than professional surety bonds.  Because the use of sheriff's bonds is authorized by the Arkansas Rules of Criminal Procedure and because sheriffs are authorized to take bail pursuant to A.C.A. 16-84-102 and A.C.A. 16-81-109, Plaintiff failed to state a claim for relief and the Complaint and Amended Complaint should be dismissed.

**H.      Neither The Arkansas Rules of Civil Procedure, Nor A.C.A. 17-19-301, Nor Any Other State Law Provides For Credit Bonding, Thus Plaintiff's Complaint Advocating The Use Of Credit Bonding Fails To State A Claim Upon Which Relief Can Be Granted.**

The Arkansas legislature has mirrored the terms of Rule 9.2(b)(ii) in stating that the premium or compensation for giving bond or depositing money or property as bail on any bond shall be ten percent (10%).  A.C.A. 17-19-301.  That statute specifically provides: "[T]he premium or compensation for giving bond or depositing money or property as bail on any bond *shall be ten percent (10%)*".  A.C.A. 17-19-301(a). *(emphasis added).*

Both the Eighth Circuit and the Arkansas Supreme Court follow the same first principle of statutory construction: to give effect to the intent of the legislature.  *Kifer v. Liberty Mut. Ins. Co.*, 777 F.2d 1325, 1332 (8th Cir. 1985).  *See Arkansas State Highway Commission v. Mabry*, 229 Ark. 261, 266, 315 S.W.2d 900, 904-05 (1958).  Where a term in a statute is clear and unambiguous, it will be given its ordinary meaning.  *Design Professionals Ins. v. Chicago Ins., Co.*, 454 F.3d 906, 910 (8th Cir. 2006) *citing Cash v. Arkansas Comm'n on Pollution Control & Ecology*, 300 Ark. 317, 320, 778 S.W.2d 606, 607 (1989).  The plain words of A.C.A. 17-19-301

provide for an arrestee who is granted bail to post 10% of the face amount of the bond.  The

Order of the Court attacked by the Plaintiff did no more than restate the requirements of A.C.A.

17-19-301 and Rule 9.2 of the Arkansas Rules of Criminal Procedure.   Because Plaintiff's

Amended Complaint, on its face, does not demonstrate any manner in which the action of the

Defendants violated the law or Plaintiff's constitutional rights, the Complaint and Amended

Complaint fail to state a claim upon which relief can be granted and should be dismissed.

**I.      Because The Order Of The Court Is Rationally Related To A Legitimate
         State Interest, Plaintiff Has Failed To State A Claim For Denial Of Equal
         Protection, Denial Of Substantive Due Process, Or Civil Conspiracy.**

A plain reading of the January 5, 2009, Court Order indicates it was drafted by the Judges

in a well-considered response to the then-current state of affairs regarding the issuance of bail

bonds for arrestees in the 22nd Judicial District.  Review of the Order also reveals that the Judges

were in fact well informed on the law regarding bail bonds because the Order faithfully tracks

the requirements of A.C.A. 17-19-301 and Ark.R.Crim.P. 9.2, Release on money bail.   The

Order finds that all bail bondsmen bonding a defendant from the Saline County Detention Center

shall collect the ten percent (10%) premium and statutorily required fees before a defendant is

released on bond in accordance with A.C.A. 17-19-301.  *(D.E. # 1 – Complaint, p. 10). (D.E. #

14-3, p. 1).*  The Order further charges the Sheriff with documenting that the premium is paid

before a defendant's release by obtaining the bondsman's signature on documents indicating the

ten percent (10%) cash premium or property of equal value is in the possession of the bondsman.

It is significant to note that the Order does *not* require the exclusive or "blanket" use of sheriff's

bonds in the 22nd Judicial District, nor does it forbid the use of cash or professional bonds.  In

fact, the Order contemplates that professional bail bondsmen will *continue* to bond criminal

defendants in the 22nd Judicial District and clearly places all bondsmen on notice that the requirements of A.C.A. 17-19-301 shall be enforced. *Id.*

The impartial Order evidences no malice or recklessness and treats all bondsmen equally. However, despite the fact that no bondsman was named or otherwise singled out for special treatment, Plaintiff alleges the Order denies Equal Protection to JCBB. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007), the United States Supreme Court held the Court was not bound to accept as true mere legal conclusions stated in a Plaintiff's complaint. In *Ashcroft v. Iqbal*, 129 S.Ct. 1937 at 1950, the Supreme Court reiterated that legal conclusions must be supported by specific factual allegations that would entitle the Plaintiff to prevail. Because Plaintiff's Equal Protection claim is wholly unsupported by facts showing that Plaintiff has been treated any differently from any other similarly situated person or company, it should be dismissed in accordance with Fed.R.Civ.P. 12(b)(6) for failure to state a claim for which relief can be granted.

In any event, Plaintiff has not and cannot establish that Defendants did not have a rational basis for their decision. Where no suspect classification is involved, a state official's decision will be upheld so long as the Court can conceive of any rational basis for the official's decision. *Vacco v. Quill*, 521 U.S. 793, 799 (1997). There was clearly a rational basis for the Judges' action here, i.e., to faithfully uphold A.C.A. 17-19-301 and Rule 9.2 of the Arkansas Rules of Criminal Procedure in the Courts of the 22nd Judicial District of the State of Arkansas. *(D.E. # 1 – Complaint, p. 10). (D.E. # 14-3, p. 1).*

Plaintiff's Substantive Due Process claim fails for the same reasons that defeat its Equal Protection Claim. Not only has Plaintiff failed to state sufficient facts to support a Substantive Due Process claim as required under the holdings in *Twombly* and *Iqbal*, a rational basis that

15

survives Equal Protection scrutiny also satisfies Substantive Due Process analysis. *Minnesota v. Clover Leaf Creamery Co*., 449 U.S. 456, 470 n. 12 (1981); *Independent Charities of America, Inc. v. Minnesota*, 82 F.3d 791, 798 (8th Cir. 1996).

Furthermore, because the January 5, 2009, Order of the Court is rationally related to a legitimate state interest, Plaintiff's unsupported allegation that Defendants "abused process" in establishing the Order likewise fails, as does its meritless allegation of civil conspiracy. *(D.E. # 14 – Amended Complaint, pp. 2, 13)*. Civil conspiracy is an intentional tort requiring a specific intent to accomplish a contemplated wrong. 16 Am. Jur.2d *Conspiracy* § 51 (1998). *See Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 445 (2001). The obvious intent of the Order was to uphold Arkansas law, not to harm bondsmen or arrestees. The Order simply requires bondsmen to comply with the requirements of A.C.A. 17-19-301 if they wish to bond clients in the 22nd Judicial District. Because the Order accurately reflects A.C.A. 17-19-301 and because the Order is rationally related to a legitimate state interest, it does not violate Plaintiff's rights to Equal Protection or Substantive Due Process, nor does it demonstrate a conspiracy, civil or otherwise. Therefore, the Complaint and Amended Complaint should be dismissed for failure to state a claim for which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

**J.     Plaintiff's Bare Allegation That All Defendants Met And Agreed To Set Only Sheriff's Bonds For Criminal Defendants In Saline County Can Be Refuted By Public Bond Records Available Under The Freedom Of Information Act.**

Plaintiff alleges that on a date unknown all the Defendants met and agreed to set only sheriff's bonds for criminal defendants in Saline County. *(D.E. # 14 – Amended Complaint, p. 13)*. Plaintiff further claims that Defendants' express purpose in setting only sheriff's bonds was to oppress JCBB and funnel money back to Saline County. *Id.* However, a bare assertion of conspiracy will not suffice. *See Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct.

1955 (U.S. 2007).  A well-pleaded complaint must contain enough factual matter (taken as true) to suggest that an agreement was made.  *Id.* at p. 2.  A plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.  *Id.*  Plaintiff's paper-thin allegation that Defendants met and agreed they would set *only* sheriff's bonds in all criminal cases in the 22nd Judicial District beginning on June 5, 2009, is easily refuted by inspection of public bond records available through the Freedom of Information Act.[2] *(D.E. # 14 – Amended Complaint*, p. 5 ¶ 22).  For example:

- On June 5, 2009, **John Chism Bail Bonds, Inc**., (the Plaintiff) wrote professional surety bond # **JC-024 No. 006634** in the amount of $1,000 for an arrestee charged with DWI 1st and Failure to Appear.

- On June 6, 2009, **Bail Bond Brokers, Inc**. wrote professional surety bond # **BM 021 02180** in the amount of $2,000 for an arrestee charged with Failure to Appear.

- On June 8, 2009, **Kathy's Bail Bonds, Inc**., wrote professional surety bond # **KC-02 No. 1644** in the amount of $2750 for an arrestee charged with shoplifting, possession of drug paraphernalia, and theft of property (2) counts.

- On June 10, 2009, **John Chism Bail Bonds, Inc**., (the Plaintiff) wrote professional surety bond # **JC-024 No. 006636** in the amount of $1,000 for an arrestee charged with Domestic Battery 3rd.

- On June 10, 2009, **Free At Last Bail Bond Company, Inc**., wrote professional surety bond **P750001387** in the amount of $5,000 for an arrestee charged with two counts of Failure to Appear, Speeding, DWI, Refusal to Submit, and Suspended Driver's License.

- On June 10, 2009, **First Arkansas Bail Bonds, Inc**. wrote professional surety bond # **AA 259 123262** in the amount of $1,000 for an arrestee charged with Failure to Appear.

---

[2]  On July 10, 2009, pursuant to Plaintiff's Freedom of Information Act request, copies of public records of professional surety bonds and sheriff's bonds written in the 22nd Judicial District from 6-5-09 and thereafter were turned over to a representative of Plaintiff's attorney by the office of Mr. George Ellis, attorney for Defendants Ray Pennington and Bruce Pennington.

- On June 11, 2009, **Bail Bond Brokers, Inc**. wrote professional surety bond # **02187 BM 021** in the amount of $1,350 for an arrestee charged with Failure to Appear.

- On June 11, 2009, **Kathy's Bail Bonds, Inc**., wrote professional surety bond **KC-02 No. 1646** in the amount of $1700 for an arrestee charged with Carrying a Concealed Weapon without Permit and Criminal Trespass.

- On June 19, 2009, **Kathy's Bail Bonds, Inc**., wrote professional surety bond **# KC 03-2002** in the amount of $2,500 for an arrestee charged with Failure to Appear (2), No Proof of Insurance, Leaving Scene of Accident, Careless, and Wrong Way Road.

- On June 19, 2009, **Kathy's Bail Bonds, Inc**. wrote professional surety bond # **KC 02-1653** in the amount of $2,000 for an arrestee charged with Domestic Battery 3rd.

- On June 20, 2009, **John Chism Bail Bonds, Inc**., (the Plaintiff) wrote a professional surety bond # **JC-024 No. 006640** in the amount of $1,600 for an arrestee charged with Criminal Impersonation, Obstruction of Governmental Operations, and No Driver's License.

- On June 21, 2009, **John Chism Bail Bonds, Inc**. (the Plaintiff) wrote professional surety bond # **JC-024 No. 006644** in the amount of $896.87 for an arrestee charged with Hot Checks and Failure to Appear.

- On June 21, 2009, **John Chism Bail Bonds, Inc**. (the Plaintiff) wrote professional surety bond # **JC-024 No. 06645** in the amount of $1,175 for an arrestee charged with DWI II and Driving on Suspended D.L.

- On June 27, 2009, **Kathy's Bail Bonds, Inc**. wrote professional surety bond # **KC-03 No. 2018** in the amount of $1910 for an arrestee charged with DWI 1, Endangering the Welfare of Minor 2nd, and Speeding.

- On June 27, 2009, **Bail Bond Brokers, Inc**., wrote professional surety bond # **BM 021 02532** in the amount of $1,920 for an arrestee charged with Failure to Appear.

- On June 29, 2009, **Kathy's Bail Bonds, Inc.** wrote professional surety bond # **KC-03 No. 2030** in the amount of $2,000 for an arrestee charged with four counts of Failure to Appear.

In addition to the aforementioned cases, bond records from the 22nd Judicial District discoverable through the Freedom of Information Act reveal many additional instances where

arrestees were released on professional surety bonds from June 5, 2009, and thereafter, which directly rebut Plaintiff's perplexing allegation that Defendants met and agreed to set only sheriff's bonds for criminal defendants in Saline County.  (*D.E. # 14 – Amended Complaint, p. 5 ¶ 22, p. 13 ¶ 80).*  Not only are professional surety bonds still being set for criminal defendants in the 22nd Judicial District, Plaintiff undeniably wrote  professional surety bonds there as recently as June 21, 2009.  Because the discretionary use of professional surety bonds in criminal cases in the 22nd Judicial District continues, it is obvious there was no "blanket agreement" to set and honor only sheriff's bonds in Saline County.  *Id.*  Therefore, Plaintiff's hollow claim of Civil Conspiracy must be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).  *(D.E. # 14 – Amended Complaint, p., 5 ¶ 22, p. 13 ¶ 80).*

**K.     Because Arkansas Courts May Regulate The Business Of Bail Bondsmen Posting Bonds Before Them And Because Circuit Courts And Judges Have The Power To Issue Orders And Process Which May Be Necessary In Their Jurisdiction, Plaintiff Has Failed To State A Claim For Violation Of The Arkansas Constitution.**

In *Jones v. Phillips*, 2008 U.S. Dist. LEXIS 17209*, Plaintiff Bernard Jones, a pretrial detainee at the Hempstead County Detention Facility, brought a § 1983 civil rights lawsuit alleging a violation of his constitutional right to post bond.  Jones contended that his bondsman of choice was not allowed to post bond at the Hempstead County Detention Facility and that Defendant, Captain Louise Phillips, denied the efforts of Jones' chosen bondsman to post bond for him.  The District Court held that Arkansas Courts may regulate the business of bail bondsmen posting bonds before them, citing *United Bonding Co. v. Johnson*, 293 Ark. 467, 739 S.W. 2d 147 (1987).  The Court granted Defendant Phillips' Motion for Summary Judgment, because given the wide discretion of the trial court Jones could not establish that any of his constitutional rights were violated.

In the *United Bonding* case relied upon by the federal district court in *Jones v. Phillips,* the Craighead County Sheriff issued a directive to his staff not to accept bail bonds from a particular bail bondsman, because the sheriff had reason to believe that an agent of the bondsman had bribed a sheriff's office employees.  The Judge of the Municipal Court of Jonesboro issued a similar directive to all employees of the Municipal Court. The bail bondsman petitioned the Craighead County Circuit Court for a Writ of Mandamus to compel the Sheriff and Court to accept bail bonds from him.  The Circuit Court held that the actions taken by the appellees were within their discretionary authority and denied the writ.  The Arkansas Supreme Court agreed and denied a Writ of Mandamus.

Likewise, in *Miller v. Pulaski County Circuit Court*, 284 Ark. 55, 679 S.W.2nd 187 (1984), a bail bondsman argued that judges of the Pulaski County Circuit Court did not have authority to issue an Order regarding the posting of bonds in their courts.  The Arkansas Supreme Court held that the passage of the general licensing act that vested administrative and regulatory authority in the Insurance Department did not conflict with the authority given the courts by Act 268 of 1959 to regulate the business of bondsmen in the courts.  The Court also took notice of the judges' inherent power to promulgate rules or order for the conduct of their courts.  *See Widmer v. Kennedy*, 243 Ark. 527, 421 S.W. 2d 609 (1968).  *See also* A.C.A. 16-13-204(b) (granting circuit courts power to issue all writs, orders, and process which may be necessary in the exercise of their jurisdiction).  The holdings in *Miller* and *Widmer* are not inconsistent with Amendment 80 § 3 of the Arkansas Constitution which states the Supreme Court shall prescribe the rules of pleading, practice and procedure for all courts.  According to both case law and statute, Arkansas courts have the innate power to implement their authority.  Although Plaintiff suggests otherwise, Amendment 80 § 3 does not take that power away.  *(D.E.*

*# 14, - Amended Complaint, p. 10).*  Because Arkansas courts may regulate the business of bail bondsmen posting bonds before them and because circuit courts and their judges have the power to issue orders and process which may be necessary in the exercise of their jurisdiction, Plaintiff has failed to state a claim for violation of the Arkansas Constitution and the Complaint and Amended Complaint should be dismissed.

**L.   Plaintiff's Claim That Its Bonding License Was Effectively Suspended In Saline County Without Notice Or Process Is Ludicrous, Thus Its Procedural Due Process Claim Should Be Dismissed.**

Plaintiff alleges Defendants have effectively suspended JCBB's license in Saline County without due process.  *(D.E. # 1 – Complaint, p. 5, ¶ 22 and ¶ 26). (D.E. # 14 – Amended Complaint, pp. 2, 6).* However, Plaintiff concedes that it continues to do business in misdemeanor cases in Saline County.  Moreover, as discussed above, admission to bail is a matter confided by law entirely to the discretion of the court; Plaintiff has no legal claim to any particular bail bond business.  *See* Ark.R.Crim.P. 9.2.  Plaintiff's claim that its bonding license was suspended in Saline County is not supported by any facts, and, in any event, is demonstrably false.  *(D.E. # 14 – Amended Complaint, pp. 2, 6).*  Ark.R.Crim.P. 9.2(b)(ii), A.C.A. 16-84-102, and A.C.A. 16-81-109 authorize a judicial officer to order, in its discretion, that bond be posted with the sheriff rather than with a private bonding company.  Furthermore, Plaintiff does not even allege that any action has officially been taken regarding its license.  Because Plaintiff's bonding license was not suspended in Saline County, no taking occurred.  Because Plaintiff failed to state a claim for denial of Procedural Due Process, the Complaint and Amended Complaint should be dismissed.

**M.    Plaintiff Failed To State A Claim For Interference With Contractual And Business Relations.**

Plaintiff claims that Defendants intentionally interfered with JCBB's contractual and business relations. *(D.E. # 1 – Complaint, pp. 1, 2, 6). (D.E. # 14 – Amended Complaint , pp. 1, 2, 5, 11).* In support of that claim, Plaintiff states that on June 29, 2009, Special Judge Meredith Wineland set a $5,000 bond for its client, arrestee Boyce Williams. *(D.E. # 14 – Amended Complaint, p. 6).* According to Plaintiff, Special Judge Wineland set Williams' bond as cash, professional, *or anything acceptable by the Sheriff.* (emphasis added). *Id.* Thereafter, Jailer Westbrook allegedly informed Plaintiff's agent that Williams could only make a sheriff's bond. *Id.* Even if those allegations are accepted as true, Jailer Westbrook's response was in complete accord with the terms of the Special Judge's Order. Although the Special Judge specified two types of bonds that were acceptable, the Order explicitly went on to state that anything acceptable to the Sheriff was acceptable to her. *Id.* Thus, the jailer, who purportedly acted on Defendants' orders in subsequently requiring a sheriff's bond, did not violate the Special Judge's Order. *Id.* As previously discussed, the setting of bond is a discretionary matter within the authority of the State's trial courts. *See United Bonding Co. v. Johnson, 293 Ark. 467.* Because the setting of bond is a discretionary matter on the part of the judicial officer, Plaintiff has no right to post bond for any arrestee in any particular case, including Boyce Williams. Moreover, Plaintiff presents no evidence to suggest that the Defendants had knowledge of its contractual relationship with Boyce Williams or that the Defendants engaged in intentional and improper interference with that relationship. *(D.E. # 14 – Amended Complaint, p. 11).* Knowledge of the relationship or expectancy on the part of the interfering party is an essential element of tortious interference that must be proven by the Plaintiff. *See Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 444 (2001). Plaintiff's scant allegations regarding the required use of a sheriff's bond for

arrestee Williams are centered on Jailer Westbrook who is not even a Defendant in this case.  As the United States Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555, "a formulaic recitation of the elements of a cause of action will not do."  Nor does a complaint suffice if it tenders "naked assertions[s]" devoid of "further factual enhancement". *Id*., at 557. For the aforementioned reasons, Plaintiff failed to state a claim for tortious interference with its contractual relationship with respect to arrestee Boyce Williams.

Plaintiff also claims it was denied the ability to bond arrestee Tommy Hathcock out of the Saline County Jail because Defendant Robinson would only set a sheriff's bond.  *(D.E. # 14 – Amended Complaint, p. 6)*.  Accepting that allegation as true, Plaintiff again fails to state a claim for intentional interference with its business relationships because the setting of bond lies in the discretion of the trial court.  Plaintiff has no right to post bond in any particular case.  In Arkansas, the function of determining the appropriateness of pretrial release, the amount of bail bond, and the type of bail bond lies solely with the judicial officer.  Ark.R.Crim.P. § 8.5 and § 9.2. *Walden v. Carmack*, 156 F.3d 861, 874 (8th Cir. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face".  *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 570.  Because Plaintiff's Complaint and Amended Complaint do not contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face with respect its allegation of tortious interference with contractual relationships, the claim should be dismissed in accordance with Fed.R.Civ.P. 12(b)(6).

**N.    Plaintiff Failed To State A Claim For Injunctive Or Declaratory Relief.**

Plaintiff also mentions declaratory and injunctive relief in its Complaint.   Because Plaintiff's Complaint fails to state any constitutional or legal claim upon which relief can be granted, Plaintiff is not entitled to such relief either on a temporary or permanent basis.

A court must consider the following factors when reviewing a motion for a preliminary injunction:  "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest."  *Dataphase Systems, Inc. v. C.L. Systems, Inc.,* 640 F.2d 109, 114 (8th Cir. 1981) (en banc).  Although "no single factor is determinative[,]"  *Id.*  at 113, "one moving for a preliminary injunction is required to show the threat of irreparable harm[,]" *Modern Computer Systems, Inc. v. Modern Banking Systems, Inc.,* 871 F.2d 734, 738 (8th Cir. 1989) (en banc).  Thus, since the Plaintiff is the party seeking the injunction, it has the burden of establishing each of these factors.  *Id*. at 737.

In the instant case, Plaintiff has failed to prove it has suffered *any* immediate, great, irreparable "wrong" meriting federal injunctive intervention, much less that it is likely to suffer from the same "wrong" in the future.  Plaintiff's bonding license was *not* suspended in Saline County, "effectively" or otherwise.  By Plaintiff's own reluctant admission, JCBB may still write professional surety bonds in the 22nd Judicial District. *(D.E. # 1 – Complaint, p. 5).*  In fact, bond records from the 22nd Judicial District available under the Freedom of Information Act confirm that Plaintiff continues to write bail bonds there.  Because the granting of bond lies within the sound discretion of the judicial officer, Plaintiff has no control as to whether the judicial officer authorizes cash bonds, sheriff's bonds, professional surety bonds or releases

arrestees on their own recognizance.  Holding otherwise would strip the judiciary of its time-honored discretion, overturn case law, invalidate statutes, alter the Arkansas Rules of Criminal Procedure, and rewrite the Arkansas Constitution.

There are numerous reasons indicating there is little probability that Plaintiff will succeed on the merits of this case, not the least of which is the fact that the Defendant Judges and Prosecutor are entitled to absolute judicial and prosecutorial immunity.  Moreover, as State employees, the Defendant Judges and Prosecutor are also entitled to sovereign and qualified immunity.  Furthermore, principles of comity suggest that this Court should abstain from hearing an important state matter.  What is more, Plaintiff fails to state a claim for relief because the granting of bond lies within the sound discretion of the courts, because sheriff's bonds are authorized by law, because Arkansas courts can regulate the business of bondsmen posting bonds before them, because Arkansas courts can issue orders which may be necessary in the exercise of their jurisdiction, because A.C.A. 17-19-301 makes no provision for credit bonding, because Plaintiff's bonding license was not suspended, and because surety bonds are still being set in the 22nd Judicial District.

Finally, the public has great interest in upholding the integrity of the legal process regarding the release of criminal defendants on bail.  The purpose of bond is to insure that an accused appears at his trial date.  *United Bonding Co. v. Johnson*, 293 Ark. at 470.  When criminal defendants fail to appear for court, the public looks to the judicial official who authorized the defendant's release, not to the bail bondsman.  A plain reading of A.C.A. 17-19-301 contemplates that the 10% statutory premium shall be paid prior to a defendant's release.  Thus, judicial officials are rightfully concerned about the practice of credit bonding where criminal defendants may be released from jail by paying bail bondsmen only a fraction of the

10% statutory premium.  The decision to release an accused on bail is among the most important and considered duties of a judicial officer.  Pursuant to Ark.R.Crim.P. 9.2(c), a judge takes into account many different factors when setting the amount of bond, including the seriousness of the crime, whether the accused is a danger to others or poses a flight risk, and the likelihood of conviction at trial.  Moreover, in setting the amount of bond, judges take the 10% statutory premium into account.  When a bail bondsman secures the release of an accused from jail by accepting less than 10% of the face amount of the bond ordered by a judge, the bondsman in effect disregards the judge's careful consideration of all the factors relevant to the accused's willful nonappearance and instead substitutes his own judgment. Furthermore, when defendants fail to appear for court, valuable court time is lost, warrants and show cause orders must be issued, law enforcement officials must expend additional resources in search of bond-jumpers, re-arrests must be made, and more court appearances must be scheduled.  Every failure to appear unnecessarily taxes an already over-burdened judicial system.

For the aforementioned reasons, Plaintiff's request for injunctive relief allowing JCBB to continue its privilege to bond clients in Saline County, to enjoin the Judges from promulgating orders regulating bail bond companies, and to enjoin Defendants from any further acts or conduct of like nature should not be granted.  Indeed, Plaintiff's own request for injunctive relief illustrates the fact that its license to bond clients in Saline County was never suspended by asking that JCBB be allowed to *continue its privilege* to bond clients in Saline County, rather than asking for the *reinstatement* of said privilege.  *(D.E. # 14 – Amended Complaint, p. 14).*

Plaintiff's request for declaratory injunctive relief declaring that Defendants' conduct deprived Plaintiff of the right to Substantive and Procedural Due Process in violation of the Fourteenth Amendment, declaring that the acts of Defendants continue to deprive JCBB of its

constitutional protections, and declaring that the January 5, 2009, Order violates the Separation of Powers Doctrine is inappropriate and tantamount to asking this Court to find Defendants liable before they have an opportunity to present a defense.  *(D.E. # 1 – Complaint, p. 7).  (D.E. # 14 – Amended Complaint, pp. 13, 14)*.  Therefore, Plaintiff's requests for declaratory relief, like those for injunctive relief, should be denied.

## V.  CONCLUSION

For the aforementioned reasons, the Judges and Prosecuting Attorney of the 22nd Judicial District of the State of Arkansas respectfully request that Plaintiff's Complaint and Amended Complaint be dismissed, that Plaintiff receive no relief whatsoever, and for all other just and proper relief.

**Respectfully submitted,**

**DUSTIN MCDANIEL**
**Arkansas Attorney General**

By:    /s/ Suzanne Hixson
Ark. Bar # 80117
Assistant Attorney General
Arkansas Attorney General's Office
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-3643
suzanne.hixson@arkansasag.gov

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I, Suzanne Hixson, Assistant Attorney General, do hereby certify that on this 30th day of July 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

By:    /s/ Suzanne Hixson
Ark. Bar # 80117
Assistant Attorney General
Attorneys for Defendants
Arkansas Attorney General's Office

27

323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-3643
suzanne.hixson@arkansasag.gov